## Case No. 12,100.
### RUAN v. GARDNER.
[1 Wash. C. C. 145.] 1

Circuit Court, D. Pennsylvania. Oct. Term, 1804.

MARINE INSURANCE — ON CARGO — MISTAKE IN MARKS—TOTAL LOSS—WITNESS— COURSE OF TRADE.

1. In an action on a policy of insurance, on goods; one of the part owners of the vessel, not interested in the insurance, may be examined to prove the loss, and other facts.

2. H. S. at the request, and for the use of the plaintiff, effected insurance on five hogsheads of sugar, on board the Brothers, and on ten hogsheads of sugar on board the Sisters; and in describing the same, by the supposed marks, a mistake was committed; but the intention to insure the quantity of sugar, according to his letter of instructions, was declared to the insurance broker. The property of the plaintiff was proved to be on board. The mistake in the marks was declared not to be material. Quere, if the assured had other sugars on board, and the claim had been for a partial loss?

[Cited in Block v. Columbian Ins. Co., 42 N. Y. 397.]

3. Proof, that possession was taken of the vessel, by a privateer under Spanish colours, and that she was carried into Porto Rico; is sufficient evidence of a total loss, after three years; during which time, nothing has been heard of the vessel or cargo; and to enable the assured to recover, it is not necessary to show a condemnation.

4. The agent, who makes the insurance, after purging himself on his voir dire, is a good witness for the assured, to prove matters respecting the policy.

5. The protest of one of the sailors of the captured vessel, made after his return to the United States, at the first port, and left with the broker of the assurers, to fix the period from which the loss was to be paid; may be given in evidence for that purpose; but it is not evidence of any fact contained in it.

6. Evidence to prove a particular course of trade, or other matters in the nature of facts, is proper; but not to prove what, or how, the law is considered by merchants.

7. Witnesses cannot be examined to prove a custom, that when insurance is made on goods, with a particular mark; those goods, so marked, must be on board, in order to entitle the assured to recover.

8. A suit, on a policy of insurance, is properly brought, if instituted in the name of the owner of the property intended to be insured; and, if the assured is a citizen of another state, the circuit court has jurisdiction; although the agent, whose name only appears in the policy, is a citizen of the state of Pennsylvania.

This was an action against the defendant, as an underwriter, upon a policy effected at the office of Shoemaker & Barret, in the name of Henry Sparks, and all others interested, (in the usual form,) on five hogsheads of sugar, marked D, on board the Brothers, at, and from, Santa Cruz, to Philadelphia; valued at 551 dollars. The vessel, on her passage, was captured by a Spanish privateer, and carried to Porto Rico. Sparks, having received information of the loss, gave

---

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

notice at the insurance office, and offered to abandon; which was refused. The plaintiff, to prove the loss, and the other facts, offered the deposition of J. Tatem, one of the part owners of the Brothers, which was objected to by Wells, for defendant, on two grounds; first, that this being a valued policy, it was to be presumed, the freight was included in the insurance; and, therefore, he was interested. Second; that he was interested to fix the loss on the underwriters, in order to get rid of the obligation imposed upon him by the bill of lading, to deliver the goods at Philadelphia. He cited [Wallace v. Child] 1 Dall. [1 U. S.] 7; [M'Veaugh v. Goods] Id. 62.

BY THE COURT (PETERS, District Judge, present). There is nothing in the first reason; because, whether the freight of the sugar was covered by the policy or not, the witness has no interest in the recovery of the plaintiff, or his failure; since, if he has insured the freight, his right to recover cannot be affected. But, at any rate, it is nothing but presumption that it was covered. As to the second ground of objection, should the plaintiff sue the owners on the bill of lading, the verdict would not be evidence in favour of the owners; and, though a recovery against the underwriters, on account of a loss by capture, would, in all probability, prevent a suit against the owners on the bill of lading; yet, this is merely a consequence too remote to affect the competency of the witness. If he have any interest, it goes to his credit, and must be submitted to the jury.

Judge PETERS added, that the plaintiff's demand in this case, being grounded on a loss by capture, would be evidence against him in an action against the owners.

It was then objected to the reading of the depositions, to prove the loss; that the protest of the captain is essential to prove it; and, that no other evidence would do; to prove which [Richette v. Stewart] 1 Dall. [1 U. S.] 317, and [Boyce v. Moore] 2 Id. 196, were read.

PER CURIAM. These cases prove what we admit; that, where the captain's protest is offered in evidence, it being contrary to the common law rules of evidence, it is essential, that the protest should be made at the first port where the protest can be made; whilst the facts stated, are fresh in the recollection of the captain, and are free from any influence afterwards derived from conversing with the owners, or others. But, in this case, there is no protest offered; and, therefore, no question as to its validity. But, no case can be shown, that, in an action against underwriters, on a loss by capture, the captain's protest is essential to prove the loss. Other evidence may be offered. It would be strange to say, that the owner of goods should lose his remedy against the underwriters, because the master, the servant of the owners of the ship, had neglected to make a protest; and though, if the protest

were necessary, he would have his remedy against the owners of the vessel; yet he would be deprived of his remedy against the underwriters; which might, in many cases, be the only effectual one. Indeed, protests of captains are not admitted as evidence at all in some of the state courts; and it is at least questionable, whether they have been admitted upon perfectly clear ground in any.

The defendant then objected to admitting the examination of Henry Sparks, in whose name the policy was effected, upon the ground of interest; since it appears from the face of the policy, that it was effected for him; that this court could not entertain jurisdiction of the cause, since Sparks was a citizen of Pennsylvania, and was substantially the plaintiff.

BY THE COURT. The objection being to the testimony of the witness on the ground of interest, he must be sworn on the voir dire; and, as to the jurisdiction of the court, that is a distinct question, which cannot be understood until he is examined. Sparks, being examined, and denying any interest in the event of the cause, was sworn in chief, and stated; that he was written to by the plaintiff, to effect an insurance on five hogsheads of sugar, on board the Brothers, and ten on board the Sisters. The order for insurance was received in a triplicate letter, at the top of which were these marks—O. pr. Sisters—D. pr. Brothers. That not knowing these initials stood for original and duplicate, but mistaking them for the marks on the sugars, he designated the five hogsheads in question, and had them insured by the mark D. But, to prevent any inconvenience which might result, if he should be mistaken as to the meaning of these initials, he informed the insurance broker, Jacob Shoemaker; that, let the sugars be marked as they might, his intention was to insure the five hogsheads mentioned in that letter; and, to identify it, he got Mr. Shoemaker to put his name at the foot of it, with the date. The latter part of his evidence was strongly supported by Shoemaker. He further stated, that, during this conversation with Shoemaker, the defendant came into the room. He afterwards received one of the bills of lading, by which he found the sugars were marked W. R.; also notice of the capture; of which he immediately gave notice at the insurance office, and offered to abandon to the underwriters.

The loss was proved by Captain Tatem, who was part owner of the Brothers and Sisters, commanded the Sisters, sailed in company with the Brothers, when both of them were taken by a privateer under French colours, and the Brothers was carried into Porto Rico. He further states, that he has never heard of the captain or any of the crew since, except one sailor, who returned to Philadelphia; also, that the plaintiff had on board the Brothers, only the five hogsheads of sugar, marked D. This sailor made his protest in Philadelphia, which was delivered in at the office of Shoemaker, in consequence of a clause in the policy, that payment was to be made within thirty days after proof made of the loss. This protest was offered by Levy, as evidence of a compliance with that provision in the policy, and objected to by Wells, as inadmissible; being made by a sailor, and not the captain, and not made at the first port.

BY THE COURT. The evidence is proper, for the purpose for which it is offered; but, the facts stated in it are not evidence, to be laid before the jury, to prove the loss.

Wells then offered witnesses to prove, that it is the custom, when insurance is effected on articles with a particular mark, they must be on board, to enable the party to recover. Cited Cunningham, 230.

BY THE COURT. You may examine witnesses to prove a particular course of trade, or other matters in the nature of facts; but not to show what the law is. Nothing could be more dangerous, than to fix the law upon the opinions of particular men. Overruled.

The defence was, that there was not sufficient proof of loss; that there is no sentence of condemnation produced; that the property insured, was different from the property lost, the former being marked D. and the latter W. R.; in consequence of which, had the vessel come safe, the assured might have demanded a return of the premium; and, if so, he cannot claim the loss. It was further contended, that the court had not jurisdiction of the cause, since the policy is in the name of Sparks, a Pennsylvanian; and, lastly, that if the court had jurisdiction, Ruan cannot recover on a policy made in the name of Sparks.

In answer to the last objection, Levy contended, that it had long been settled, that, until the act of parliament, which requires agents to insert in policies the names of their principals, the action might be brought in the name of the trustee, or cestui que trust. He cited Cunningham, 276; 1 Show. 151; 4 Term R. 342, 343; 1 East, 335.

THE COURT were of opinion, that there was no weight in the objection to the jurisdiction, or to the action. As to the first; because Ruan is not only the nominal, but substantial and real plaintiff—it being clearly proved, that Sparks effected the policy upon property belonging to him, and at his request. As to the second; that the action might certainly be supported in the name of the principal, though not specially mentioned; the policy being in the usual form, in the name of Sparks, and of all other persons having interest.

WASHINGTON, Circuit Justice, (charging jury). This is an action to recover the loss upon a valued policy, effected by Sparks, for the benefit of Ruan, the plaintiff. Tatem has been examined, and states, that he was in company with the Brothers, when she was attacked by a privateer under Spanish col-

ours, was made prize of, and carried into Porto Rico. There is no opposing testimony; and Tatem, in point of credit, stands unimpeached by any other witness. Independent of this positive evidence, it is now three years since the capture, and nothing has been heard of the vessel and cargo. As to a sentence of condemnation, none is necessary; because the voyage having been put an end to by the capture, the assured had a right, on notice of it, to abandon to the underwriters; which it appears he did in due time.

The next and mose important question, is, whether sufficient evidence has been given, that the five hogsheads, shipped by the plaintiff, were covered by the policy, or not. It appears, that the agent of the plaintiff acted under a mistake, when he insured the sugar as marked D; but, doubting whether it was or was not a mistake, he did every thing he could, to satisfy the broker, who, (pro hac vice,) was the agent of the underwriters; that the sugar insured, was the five hogsheads on board the Brothers, shipped by the plaintiff. It was perfectly immaterial to the risk, what were the marks on the hogsheads, provided the risk undertaken by the underwriters, was neither changed nor increased. Nor was it the case; since it is in proof, that the plaintiff shipped but five hogsheads on board the Brothers. If, indeed, he had had more, some marked D, and others with other marks, and a partial loss had happened; it would not have been competent to the plaintiff to shift from one mark to another, so as to alter the risk, and possibly make the underwriters liable for hogsheads not insured. But this was not, and could not be the case, in the present instance.

The plaintiff, therefore, having proved the loss; property in the goods insured; notice and proof of loss at the insurance office, and an abandonment: if the jury believe the witnesses, their verdict must be for the plaintiff.

Jury found for the plaintiff.